# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH F. GAZZO, II** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **Civil Action No. 1:09cv719-LG-RHW** |
| | § | |
| **MISSISSIPPI DEPARTMENT OF** | § | |
| **PUBLIC SAFETY, et al.** | § | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING MDPS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR RULE 56(d) RELIEF

**BEFORE THE COURT** is the Motion for Summary Judgment [81] filed by the Mississippi Department of Public Safety and the Motion for Rule 56(d) Relief [87] filed by Joseph F. Gazzo, II. Upon reviewing the submissions of the parties and the applicable law, the Court finds that Gazzo's Motion for Rule 56(d) Relief should be denied, and MDPS' Motion for Summary Judgment should be granted.

### DISCUSSION

A complete discussion of the facts and procedural history related to this case are included in this Court's Memorandum Opinion and Order Granting Williams' Motion for Summary Judgment [33] and Order Granting Motion for Judgment on the Pleadings and Motion to Dismiss and Denying Motion to Amend Complaint [34]. Gazzo's claims arise out of a former MDPS Commissioner's decision to deny Gazzo's request for permission to work past the required retirement age for troopers working for the Mississippi Highway Safety Patrol. He also alleges that he was subjected to harassment prior to the denial of his request for an extension. This Court has previously dismissed Gazzo's claims against the following defendants, who were sued

in their individual capacities only: former Commissioner George Phillips, former Commissioner Charles V. Williams, former Commissioner Stephen Simpson, Houston Dorr, and John Perkins.  Gazzo has filed claims against MDPS pursuant to 42 U.S.C. § 1983 and the Age Discrimination in Employment Act, as well as a state law claim for promissory estoppel.

## I.  Rule 56(d) Relief

Gazzo argues that he cannot adequately respond to MDPS' Motion until he is permitted to conduct discovery regarding whether MDPS has accepted federal funding. He argues that the acceptance of federal funding constitutes a waiver of sovereign immunity.  The Fifth Circuit has previously rejected this argument.  *Sullivan v. Univ. of Tex. Health Sci. Ctr.*, 217 Fed. App'x 391, 395 (5th Cir. 2007); *McGarry v. Univ. of Miss. Med. Ctr.*, 355 Fed. App'x 853, 856 (5th Cir. 2009).  Furthermore, for the reasons set forth below, the Court finds that MDPS is not entitled to sovereign immunity concerning Gazzo's claims.

All of Gazzo's other arguments in support of his request for Rule 56(d) relief are vague and conclusory.  He admits that he was able to obtain written discovery from MDPS, but he notes that he has not had the opportunity to take a 30(b)(6) deposition of MDPS.  Gazzo does not specify what facts he wishes to obtain from this deposition or how this deposition would assist him in demonstrating the existence of a genuine issue of material fact.  *See Stearns v. Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999).  Therefore, Gazzo is not entitled to Rule 56(d) relief.

## II. Sovereign Immunity

The Eleven Amendment provides that federal courts cannot exercise jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The United States Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *P. R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  The amendment serves as a jurisdictional bar to lawsuits brought in federal court against state governments and state agencies that are considered "arms of the state."  *P.R. Aqueduct*, 506 U.S. at 687-88; *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001).  MDPS is a state agency that is entitled to Eleventh Amendment immunity.  *Brown v. Simpson*, No. 4:08cv117-P-S, 2009 WL 2449898 at *1 n. 1 (N.D. Miss. Aug. 7, 2009); *see also King v. Miss. Highway Patrol*, 827 F. Supp. 402, 403-04 (S.D. Miss. 1993) (discussing the Mississippi Highway Patrol, which is a unit of MDPS).

In order for a party to pursue a lawsuit against a state or its agencies, either the state must waive its sovereign immunity, or Congress must intentionally abrogate the state's immunity pursuant to Section 5 of the Fourteenth Amendment.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  42 U.S.C. §1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties," unless the state waives its immunity.  *Will*, 491 U.S. at 66 (citing

*Quern v. Jordan*, 440 U.S. 332, 341 (1979)).  In addition, the United States Supreme Court has held that Congress did not validly abrogate the states' sovereign immunity when it enacted the ADEA.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000).

Waiver of sovereign immunity can only be found where the state has made a clear declaration of its intent to waive immunity, and only a person with the authority to waive immunity pursuant to state law can effect such a waiver.  *Magnolia Venture Capital Corp. v. Prudential Sec., Inc.*, 151 F.3d 439, 443-44 (5th Cir. 1998).  Generally, a court will hold that a state has waived its immunity if "(1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction."  *Meyers v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005).

The Fifth Circuit has recently held that Mississippi expressly preserved its sovereign immunity to lawsuits in federal court when it enacted the Mississippi Tort Claims Act.  *McGarry v. Univ. of Miss. Med. Ctr.*, 355 Fed. App'x 853, 856 (5th Cir. 2009) (citing Miss. Code Ann. §11-46-5(4)).  As a result, the Fifth Circuit held that the plaintiff's age discrimination claims and state law claims in that case were barred.  *McGarry*, 355 Fed. App'x at 857.

In the present case, Gazzo argues that MDPS waived its immunity by removing the lawsuit to federal court and by proceeding for over a year in this lawsuit before filing an immunity motion.  The United States Supreme Court has held that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the

State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum." *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002). In *Meyers v. Texas*, the Fifth Circuit determined that removal of federal claims to federal court also constitutes a waiver of Eleventh Amendment immunity. *Meyers*, 410 F.3d at 250. Nevertheless, the Court in *Meyers* held that "a sovereign enjoys two kinds of immunity that it may choose to waive or retain separately – immunity from suit and immunity from liability." *Id.* at 252-53. The Fifth Circuit noted that this determination: (1) "is consistent with the [Supreme] Court's view . . . that the Constitution protects but does not create the states' sovereign immunity, and that the Eleventh Amendment did not create, change or add to that immunity;" (2) "is consistent with *Lapides* in that it would not allow a state to assert its immunity from suit twice in the same case;" and (3) "consistently with the [Supreme] Court's cases, it would allow a state, if its law authorizes, to waive its immunity from suit without waiving its immunity from liability." *Id.* at 253. The Fifth Circuit further explained:

> [C]ourts must look to the law of the particular state in determining whether it has established a separate immunity against liability for purposes of waiver. Unlike a state's waiver of its immunity from suit in federal court, the state's waiver or retention of a separate immunity from liability is not a matter in which there is an overriding federal interest justifying the application of a federal rule. For these reasons, we conclude that the Constitution permits a state whose law provides that it possesses an immunity from liability separate from its immunity from suit to show that its waiver of one does not affect its enjoyment of the other.

*Id.* Thus, in *Meyers*, the court held that "when Texas removed the case to federal court it voluntarily invoked the jurisdiction of the federal courts and waived its immunity

from suit in federal court." *Id.* at 255.  The court further explained that the separate issue of whether Texas waived its immunity from liability was an issue that had to be decided according to Texas law.  *Id.*  As a result, in the present case, MDPS waived its Eleventh Amendment immunity by removing this case to this Court.  Thus, pursuant to *Meyers*, this Court must determine whether Mississippi's own sovereign immunity law defeats Gazzo's claims against MDPS.  *See Meyers v. Texas*, 454 F.3d 503, 504 (5th Cir. 2006).

> Miss. Code Ann. §11-46-3 provides:
>
> The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or . . . any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature . . . .

However, Mississippi waived the immunity of the State and its political subdivisions from claims for money damages arising out of the torts of those entities and the torts of their employees while acting within the course and scope of their employment. Miss. Code Ann. § 11-46-5.  Furthermore, the Fifth Circuit, while construing Mississippi law, has held that, "[a]lthough the [Mississippi Tort Claims Act] does not explicitly waive immunity for federal causes of action, its acknowledgment and coverage of liabilities outside the MTCA effectively waives immunity."  *Black v. N.*

*Panola Sch. Dist.*, 461 F.3d 584, 595 (5th Cir. 2006) (citing Miss. Code Ann. § 11-46-17(2) and *McGehee v. DePoyster*, 708 So. 2d 77, 82 (¶14) (Miss. 1998)).  In *McGehee*, the Mississippi Supreme Court stated:

> We further note . . .  that nothing in §11-46-1 purports to insulate the State, its political subdivisions or any if its employees from liability for constitutional violations.  To the contrary, §11-46-17, which provides for the creation of the Tort Claims Fund and liability insurance, authorizes plans of self-insurance established by political subdivisions to "provide coverage for liabilities outside the provisions of this chapter, including but not limited to liabilities arising from Sections 1983 through 1987 of Title 42 of the United States Code . . . ."  Miss. Code Ann. § 11-46-17(2)(Supp. 1997) (emphasis added).

*McGehee*, 708 So. 2d at 82 (¶14).

As a result, this Court finds that Mississippi's sovereign immunity law does not insulate the MDPS from liability for Gazzo's claims.  Nevertheless, MDPS argues that it is also entitled to summary judgment as to the merits of Gazzo's claims.  Therefore, this Court will analyze each of those claims.

## III.  Gazzo's Section 1983 Claim

States and state agencies cannot be sued under section 1983, because they are not considered "persons" within the meaning of the statute.  *Will*, 491 U.S. at 71.  Furthermore, this Court has already held that the individual defendants to this lawsuit are entitled to summary judgment with regard to Gazzo's section 1983 claim.  For those same reasons, MDPS would also be entitled to summary judgment as to the section 1983 claim, assuming for the sake of argument only that Gazzo were able to sue the MDPS under section 1983.

**IV.  Gazzo's Age Discrimination in Employment Act Claim**

   **A. Gazzo's Discharge:**

   29 U.S.C. § 623(j) provides:

   It shall not be unlawful for a employer which is a State, a political subdivision of a State, an agency or instrumentality of a State or political subdivision of a State, or an interstate agency to fail or refuse to hire or to discharge any individual because of such individual's age if such action is taken - -

   (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer, the employer has complied with section 3(d)(2) of the Age Discrimination in Employment Amendments of 1996 if the individual was discharged after the date described in such section, and the individual has attained–

      (A) the age of hiring or retirement, respectively, in effect under applicable State or local law on March 3, 1983; or

      (B)(i) if the individual was not hired, the age of hiring in effect on the date of such failure or refusal to hire under applicable State or local law enacted after September 30, 1996; or

      (ii) if applicable State or local law was enacted after September 30, 1996, and the individual was discharged, the higher of –

      (I) the age of retirement on effect on the date of such discharge under such law; and

      (II) age 55; and

   (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

   The Mississippi retirement statute at issue initially went into effect on July 1, 1958, and provided for retirement of law enforcement officers at age fifty-five but permitted separate one-year extensions up to age sixty, at which time retirement became mandatory.  1958 Mississippi Laws Ch. 543, §6 (cited in Miss. Att'y Gen. No.

1997-0514, 1997 WL 549517 (Aug. 15, 1997)).  On July 1, 1986, the statute was amended to provide for retirement at age sixty, with extensions permitted up to age sixty-five.  Miss. Code Ann. § 25-13-11(f).

Mississippi's mandatory retirement age of sixty was in effect on March 3, 1983. Furthermore, as former Mississippi Attorney General Mike Moore opined, since Mississippi's mandatory retirement requirement was enacted in "1958, long prior to the December 15, 1967, effective date of the Age Discrimination in Employment Act," Mississippi's retirement requirement could not have been a subterfuge to evade the purposes of the ADEA.  *See* Miss. Att'y Gen. No. 1997-0514, 1997 WL 549517 (Aug. 15, 1997).

Pursuant to Miss. Code Ann. § 25-13-11(f), Gazzo, as a member of the Mississippi Highway Patrol, was required to retire at the age of sixty.  However, he was permitted to request separate one-year extensions of his employment until he reached age sixty-five.  *See* Miss. Code Ann. § 25-13-11(f).  His first request for an extension was granted.  He claims that his second request was granted by Commissioner George Phillips just prior to Phillips' resignation, but that Phillips' successor, Charles Williams, improperly denied the extension a few months later. Since it is undisputed that Gazzo was required to retire after he reached age sixty, the Court finds that MDPS did not violate the ADEA as a matter of law.  Gazzo's arguments concerning whether he has demonstrated the existence of a prima facie case of age discrimination are not relevant, because the MDPS was specifically permitted to discharge Gazzo due to his age.  *See* 29 U.S.C. § 623(j).

-9-

**B. Hostile Work Environment:**

MDPS argues that the Fifth Circuit does not recognize a claim for hostile work environment pursuant to the ADEA.  However, the Fifth Circuit has actually never determined whether such a cause of action exists.  In *Mitchell v. Snow*, the Fifth Circuit noted that it has never held that the ADEA contemplates a hostile work environment claim, but it was not necessary for the Court to reach that decision. *Mitchell v. Snow*, 326 Fed. App'x. 852, 854 n.2 (5th Cir. 2009).  The Court came to the same conclusion in *McNealy v. Emerson Elec. Co.*, 121 Fed. App'x 29, 34 n.1 (5th Cir. 2005).  In both of those cases, the Court assumed without determining that the plaintiff could assert a hostile work environment claim, but held that the claim should be dismissed on other grounds.  As a result, this Court will consider Gazzo's claim, utilizing Title VII case law.

To state a hostile work environment claim, a plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action.  *Equal Emp't Opportunity Comm'n v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007).  For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. *WC&M Enters.*, 496 F.3d at 399.  "Although 'discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or

pervasive' to support evidence of a . . . violation, 'simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges' that can survive summary judgment." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995); *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)).

The only evidence that Gazzo has submitted in support of his hostile work environment claim are responses to requests for admissions in which MDPS admitted that two former defendants, Dorr and Perkins, had sent threatening messages to persons other than Gazzo.  Gazzo claims in his First Amended Complaint that these threatening messages concerned threats of jail and wire taps.  He also claims that they were sent to persons that he intended to call as witnesses at a grievance proceeding. However, there is no evidence that supports these allegations.  The Court recognizes that Gazzo claims that he was not permitted to complete discovery in this matter, but nothing prevented him from obtaining affidavits from his own witnesses or from signing his own affidavit to support his claims.  A party opposing summary judgment may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).  Nevertheless, out of an abundance of caution, the Court will consider the unsworn allegations made by Gazzo, as well as evidence submitted by MDPS.

In his pleadings, Gazzo claims that he and other employees were dispatched on

"ghost calls" to investigate accidents that he found to be non-existent upon his arrival. He also claims that he was excluded from meetings, abruptly stripped of his duties as Public Affairs Officer, and assigned the midnight-shift.  In a grievance statement that was produced to the Court by MDPS, Gazzo claimed that these changes in his employment and duties were made during the same meeting that he was provided with written notice that his first request for an age-related extension was granted.  (Ex. B to Def.'s Mot.)  Gazzo's public affairs duties and former work schedule were reinstated after he filed the grievance. (Ex. C to Def.'s Mot. at p. 3).

Gazzo also claims that Major Houston Dorr told him, "Let's get this settled once and for all . . ." and then told a secretary that she better leave because "things are going to get ugly."  In his grievance statement, Gazzo claimed that Dorr then screamed at him and accused him of not coming to work until after lunch.

Gazzo also alleges that he was banished from the Gulfport work station after a secretary filed false harassment charges against him.  He also claims that his son and his friend, who are also troopers, were ordered to stop making solicitations for contributions to a Christmas party.  Gazzo claims that this "intimidation" was related to grievances that he had filed.

The Court finds that these incidents were not sufficiently severe or pervasive to constitute a hostile work environment.  Most of the incidents were merely minor annoyances or the reasonable response to allegations of harassment.  In addition, the changes in Gazzo's duties and work schedule were promptly remedied by MDPS, after Gazzo filed a grievance.

The most serious harassment was actually directed at other people, and there is no evidence that these threats concerned Gazzo in any way.  The only threats that concerned age are too vague to be considered a reference to Gazzo.  For example, one of the alleged threats was, "Cruz, K8, and Unit K are old men.  You are young with kids.  Hate to see you loose [sic] your freedom . . . ."  The only other age-related comment was, 'Those two old men sold you out."  The Court is unaware of the circumstances surrounding these statements, or the names of the persons to whom these comments were directed.  The Court also has not been informed who Cruz, K8, Unit K, or "those two old men" are.  However, even if these statements referred to Gazzo, these two comments that were made to people other than Gazzo do not constitute severe or pervasive harassment.

Finally, it should be noted that Gazzo alleged in his grievances that several people of different ages were subjected to harassment by Houston Dorr.  Gazzo even requested a mental evaluation of Dorr in his grievance statements.  In his grievances, Gazzo expressed several possible reasons for Dorr's mistreatment of himself and others.  For example, Gazzo noted that Dorr harassed and held grudges against persons that Dorr believed disliked him, and that Dorr was focused on "winning at all costs."  Gazzo also claimed that Dorr became upset with him for taking off time after Hurricane Katrina.  These incidents and allegations tend to show that Dorr mistreated people in general, rather than singling Gazzo out because of his age.

For all of these reasons, the Court finds that MDPS is entitled to summary judgment concerning Gazzo's hostile work environment claim.

**C.  Retaliation:**

A plaintiff establishes a prima facie case of ADEA retaliation by demonstrating that: (1) he engaged in activity protected by the ADEA; (2) an adverse employment decision occurred; and (3) there was a causal connection between the protected act and the adverse employment decision.  *Sherrod v. Amer. Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994).

> In order to establish a causal link between the protected conduct and the illegal employment action . . ., the evidence must show that the employer's ultimate decision to terminate was based in part on knowledge of the employee's protected activity.  A causal link can be established by evidence that the ultimate decision maker, with final authority to hire and fire subordinate employees, merely "rubber stamped" a recommendation to terminate made by an employee with knowledge of the complaint.

*Sherrod*, 132 F.3d at 1122.  "The ultimate issue of retaliation requires the employee to prove that the adverse employment action would not have occurred 'but for' the protected activity."  *Id.*

The only argument that Gazzo makes in support of his retaliation claim is, "Plaintiff Gazzo filed several internal grievances against his supervisor, Major Houston Dorr, describing his belief that Major Dorr was retaliating against him based upon Plaintiff's second, age-related extension."  There is no evidence before this Court that Gazzo's grievance alleging age discrimination motivated the decision to deny his second request for an extension in any way.  Furthermore, the Commissioner of MDPS is the only person with authority to grant an age extension.  *See* Miss. Code Ann. § 25-13-

11(f). The Commissioner that denied Gazzo's extension was Charles Williams. (Ex. K to Def.'s Mot.) Williams had held the position of Commissioner for only a few months at the time that the decision was made, and there is no indication regarding whether he was even aware of Gazzo's grievance. The grievance was handled by Williams' predecessor, George Phillips.

As a result, Gazzo has not set forth a prima facie claim of age retaliation, and MDPS is entitled to judgment as a matter of law.

## V. Gazzo's Promissory Estoppel Claim

The statute of limitations applicable to state law claims against the State and its agencies is one year. Miss. Code Ann. § 11-46-11 (3). Gazzo's age extension was denied by Williams on February 12, 2008. (Ex. K to Def.'s Mot.) Therefore, Gazzo's cause of action against MDPS accrued on that date. Gazzo did not file this lawsuit until April 28, 2009, and he does not allege that the statute of limitations should be tolled for any reason. As a result, Gazzo's promissory estoppel claim must be dismissed.

## VI. The John Doe Defendants

The only claims that remain pending in this lawsuit are Gazzo's claims against John Does 1-2. He must file an amended complaint that names these defendants by June 6, 2011, or those claims will be dismissed without prejudice.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Motion for Summary Judgment [81] filed by the Mississippi Department of Public Safety is **GRANTED** and the Motion for Rule 56(d) Relief [87] filed by Joseph F. Gazzo, II, is **DENIED**. Gazzo's

claims against MDPS are hereby **DISMISSED WITH PREJUDICE**.

  **IT IS FURTHER ORDERED AND ADJUDGED** that Gazzo must file an amended complaint that names John Does 1-2 by June 6, 2011, or those claims will be dismissed without prejudice.

  **SO ORDERED AND ADJUDGED** this the 13th day of May, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE
